## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TAURIUS MARQUES HOLMES**                          **CIVIL ACTION**

**versus**                                          **NO. 10-1593**

**ROBERT C. TANNER, WARDEN**                        **SECTION: "J" (1)**

### REPORT AND RECOMMENDATION

  This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

  Petitioner, Taurius Marques Holmes, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana.  On October 25, 2005, he was convicted of two counts of attempted first degree murder.[1]  On December 14, 2005, he was sentenced on each count to a concurrent term of twenty-five years imprisonment without benefit of probation, parole,

---

[1] State Rec., Vol. III of IV, transcript of October 25, 2005, pp. 205-06; State Rec., Vol. I of IV, minute entry dated October 25, 2005; State Rec., Vol. I of IV, jury verdict form.

or suspension of sentence.[2]  On April 12, 2006, he was found to be a second offender and was resentenced as such as on Count I to a concurrent term of forty years imprisonment without benefit of probation, parole, or suspension of sentence.[3]  On March 23, 2007, the Louisiana First Circuit Court of Appeal affirmed petitioner's convictions, habitual offender adjudication, and sentences.[4] The Louisiana Supreme Court then denied his related writ application on November 16, 2007.[5]

On or about July 11, 2008, petitioner filed an application for post-conviction relief in the state district court.[6]  That application was denied on October 20, 2008.[7]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on April 3, 2009,[8] and by the Louisiana Supreme Court on February 26, 2010.[9]

On or about May 6, 2010, petitioner filed the instant application for federal *habeas corpus* relief.  In support of his application, he asserts the following claims:

---

[2] State Rec., Vol. III of IV, transcript of December 14, 2005; State Rec., Vol. I of IV, minute entry dated December 14, 2005.

[3] State Rec., Vol. III of IV, transcript of April 12, 2006; State Rec., Vol. I of IV, minute entry dated April 12, 2006; State Rec., Vol. III of IV, Reasons for Judgment.

[4] State v. Holmes, No. 2006 KA 1433, 2007 WL 866365 (La. App. 1st Cir. Mar. 23, 2007); State Rec., Vol. III of IV.  However, the Court of Appeal amended the sentence on Count II to specify that it was to be served at hard labor.

[5] State v. Holmes, 967 So.2d 521 (La. 2007) (No. 2007-KO-0947); State Rec., Vol. III of IV.

[6] State Rec., Vol. III of IV.

[7] State Rec., Vol. III of IV, Order Dismissing Application for Post-Conviction Relief.

[8] State v. Holmes, No. 2008 KW 2517 (La. App. 1st Cir. Apr. 3, 2009); State Rec., Vol. III of IV.

[9] State *ex rel.* Holmes v. State, 28 So.3d 265 (La. 2010) (No. 2009-KH-1000); State Rec., Vol. III of IV.

1.      Petitioner's convictions violated the Double Jeopardy Clause;

2.      Petitioner's sentences violated the Double Jeopardy Clause;

3.      Petitioner's sentences were excessive;

4.      The prosecution knowingly presented false testimony at trial;

5.      Petitioner's counsel was ineffective; and

6.      There was insufficient evidence to support petitioner's convictions.

The state concedes that petitioner's federal application is timely and that he has exhausted his remedies in state court.[10]

<u>Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28

---

[10]  Rec. Doc. 12, p. 3.

U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so*

> *lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> On February 18, 2005, the victims, Probation and Parole Officers Shannon Stewart and Michael Breland, were in the Bogalusa area to conduct a supervised visit with the defendant. The officers were in uniform and had their weapons and badges displayed. On the way to the defendant's house, Officer Breland recognized the defendant driving a car. As the defendant drove passed them, the officers noticed a passenger in the vehicle, and they observed the defendant's vehicle pull up next to another vehicle and converse with its driver. The officers drove around the block and returned to the area where they had seen the defendant. The defendant's vehicle and the other vehicle had left that location, but were side-by-side at a nearby intersection. The driver of the other vehicle was standing at the passenger window of the defendant's vehicle. Officer Breland exited his vehicle, identified himself, and stated he needed to speak with the defendant. The defendant fled in his vehicle. The driver of the other vehicle ran back to his vehicle and also fled.
>
> Officers Stewart and Breland called for back up and began chasing the defendant. Eventually, the defendant drove across an old culvert, "appeared to spin out" in front of a house, and brought his vehicle to a complete stop in the front yard. Officer Breland thought the defendant was going to surrender. The officers parked their vehicle between a curve in the road and the culvert, exited the vehicle, and walked on the street in front of the yard to see if the defendant was surrendering. The officers had their service weapons out and ordered the defendant and his passenger to step out of the car and show their hands.
>
> Officer Stewart indicated the defendant's vehicle sat motionless for a second, and then the tires on the car started spinning and the car moved directly toward Officer Breland and himself. Officer Stewart ordered the defendant to stop and began firing as the

defendant drove across a small ditch directly at Officer Stewart. Officer Stewart was unaware of any braking of the vehicle by the defendant or of any decrease in the vehicle's speed, and indicated the vehicle was not veering away from him. Officer Stewart dove out of the path of the vehicle and avoided being struck by the vehicle by only a few inches. The incident occurred during the day, in good weather, and without anything obstructing the defendant's view of Officer Stewart.

Officer Breland also indicated the defendant's vehicle traveled directly toward him. Officer Breland heard the vehicle's engine revving and its tires spinning. He did not hear the motor idle down, did not see the vehicle's wheels stop spinning, and the defendant did not swerve the vehicle away from Officer Breland. Officer Breland also indicated that the defendant did not have to drive directly forward at him in order to leave the yard and could have left the yard in three other directions. Officer Breland ordered the defendant to stop, and as he moved out of the way, Officer Breland fired his weapon six times. Officer Breland stated that he either dove or fell from the oncoming path of the vehicle, which passed within a foot of him, just before the vehicle sped away from the scene.

Officer Stewart later captured the defendant in a wooded area after he abandoned his vehicle and fled on foot.

Bogalusa Police Department Officer Paris Smith subsequently advised the defendant of his Miranda[FN3] rights and the defendant indicated he was "[s]erving a lick" when Officer Breland "came up on him." Officer Smith explained "serving a lick" was a street term for selling drugs. He also indicated the defendant later specified Officer Breland had disturbed him while the defendant was selling marijuana.

[FN3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[11]

---

[11] Holmes, 2007 WL 866365, at *1-2; State Rec., Vol. III of IV.

Double Jeopardy

In his first two claims for relief, petitioner argues that both his convictions and his sentences violated the Double Jeopardy Clause.  In the last reasoned state court decision addressing those claims, the state district court rejected them, holding:

> Petitioner was found guilty of two counts of attempted murder because he drove his car towards two probation officers in an attempt to run them over while they sought to apprehend him.  Petitioner asserts that this is but one action, and therefore is but one offense. However, the presence of multiple victims makes this one action of multiple offenses.  The double jeopardy claim is without merit.
> In his second claim, petitioner alleges that the double jeopardy arising from the two convictions renders the habitual offender conviction null and void.  Once again, there is no double jeopardy, and the second claim as it relates to the habitual offender adjudication is without merit.[12]

Relief was then likewise denied both by the Louisiana First Circuit Court of Appeal,[13] and by the Louisiana Supreme Court,[14] without additional reasons assigned.

"A double jeopardy claim is a question of law."  Shute v. State of Texas, 117 F.3d 233, 238 (5th Cir. 1997); see also Weathersby v. Louisiana, Civ. Action No. 08-3729, 2010 WL 4022804, at *3 (E.D. La. Sept. 14, 2010), adopted, 2010 WL 4000602 (E.D. La. Oct. 8, 2010). Therefore, this Court must defer to the state court's decision rejecting the claims unless petitioner shows that the decision "was contrary to, or involved an unreasonable application of, clearly

---

[12]  State Rec., Vol. III of IV, Order Dismissing Application for Post-Conviction Relief, p. 2.

[13]  State v. Holmes, No. 2008 KW 2517 (La. App. 1st Cir. Apr. 3, 2009); State Rec., Vol. III of IV.

[14]  State ex rel. Holmes v. State, 28 So.3d 265 (La. 2010) (No. 2009-KH-1000); State Rec., Vol. III of IV.

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

2254(d)(1).  As noted below, petitioner has made no such showing in the instant case.

The protection against double jeopardy is enshrined in the Fifth Amendment and

made enforceable against the states through the Fourteenth Amendment.  Benton v. Maryland, 395

U.S. 784, 794 (1969); Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988).  The United States

Supreme Court has explained:

> That guarantee has been said to consist of three separate
> constitutional protections.  It protects against a second prosecution
> for the same offense after acquittal.  It protects against a second
> prosecution for the same offense after conviction.  And it protects
> against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled in part on other

grounds, Alabama v. Smith, 490 U.S. 794, 802-03 (1989); see also Department of Revenue v.

Montana, 511 U.S. 767, 769 n.1 (1994).  For the following reasons, the Court finds that there clearly

was no violation of these federal protections against double jeopardy.[15]

As explained by the state district court, petitioner's convictions for the two counts

of attempted first degree murder were distinct offenses because each involved a different victim.

Therefore, the Double Jeopardy Clause simply was not implicated.  See, e.g., Miller v. Turner, 658

F.2d 348, 350-51 (5th Cir. 1981); see also Lave v. Dretke, 416 F.3d 372, 382 (5th Cir. 2005).

---

[15]   To the extent that petitioner is requesting that this Court consider whether his convictions and
sentences violated double jeopardy protections afforded by *state* law, the Court cannot oblige.
Federal *habeas corpus* relief is available only for violations of federal constitutional law and,
therefore, this Court does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d
688, 695 (5th Cir. 1998).

Accordingly, neither the two prosecutions nor the two sentences for the two distinct offenses ran afoul of the prohibition against double jeopardy.

To the extent that petitioner is perhaps also contending that the Double Jeopardy Clause was violated because a prior conviction was used to enhance his current sentence, that contention is also clearly meritless.  "It is a well-recognized principle in federal habeas corpus proceedings that habitual offender statutes do not violate the double jeopardy clause of the United States Constitution."  Woodward v. Beto, 447 F.2d 103, 104-05 (5th Cir. 1971); see also Gryger v. Burke, 334 U.S. 728, 732 (1984) ("The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes.  It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."); United States v. Wittie, 25 F.3d 250, 257 (5th Cir. 1994) ("It is well-settled that using prior crimes to 'enhance' a sentence does not impinge on double jeopardy, because defendants are not 'punished' for crimes so considered."), aff'd, 515 U.S. 389 (1995).

In light of the foregoing, petitioner cannot show that the state court decision rejecting his double jeopardy claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Accordingly, under the deferential standards of review mandated by the AEDPA, this Court must likewise reject the claims.

<u>Excessive Sentence</u>

Petitioner next claims that his sentences are excessive.  That claim likewise has no merit.

To the extent petitioner is arguing that his sentences are excessive or otherwise inappropriate under Louisiana law, the claim is not cognizable in this federal proceeding.  As noted previously, federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentences under state law.

Further, to the extent that petitioner is contending that his sentences are excessive under the Eighth Amendment of the United States Constitution, his claim fares no better.  In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)).  "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes."  Gonzales, 121 F.3d at 942 (quotation marks omitted).  "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare."  Id.  (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence.  Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).   Moreover, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses."  Id.

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment."  Gonzales, 121 F.3d at 943.  In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses.  The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check.  The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law.  Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

In light of the Rummel finding that a *life* sentence was not excessive when imposed for a *nonviolent* offense where the habitual offender had two prior *nonviolent* offenses, all of which were relatively minor offenses, this Court cannot conclude that petitioner's sentences for the grave

crime of attempted first degree murder, both of which were well below the maximum sentences available, were grossly disproportionate.  See, e.g., Hebert v. Borer, No. 10-1530, 2011 WL 2471342, at *7-9 (E.D. La. Apr. 21, 2011) (fifty-year sentence for attempted first degree murder was not excessive), adopted, 2011 WL 2470123 (E.D. La. June 21, 2011); Marshall v. Donnelly, Civ. Action No. 88-1946, 1989 WL 10718, at *2-3 (E.D. La. Feb. 1, 1989) (forty-year sentence for attempted first degree murder was not excessive), aff'd, 886 F.2d 1312 (5th Cir. 1989).  In that the sentences were not grossly disproportionate, this Court's "inquiry is finished."  Gonzales, 121 F.3d at 942.  Because petitioner's sentences were not so excessive as to violate the United States Constitution, this claim must fail.

<u>Presentation of False Testimony</u>

Petitioner next claims that the prosecutor knowingly elicited false testimony to obtain the convictions.  For a petitioner to establish that his constitutional rights have been violated by the introduction of false testimony, he "must show (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false."  Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001).

In the instant case, petitioner's claim is based on nothing more than his contention that the officers must have committed perjury because their testimony and the underlying police reports were "inconsistent and contradictive [sic]."[16]  That is simply untrue.  The testimony and reports were consistent on the crucial point, i.e. that petitioner tried to run over Officers Breland and Stewart with a vehicle while attempting to flee.  In his argument to the contrary, petitioner simply

---

[16]  Rec. Doc. 3, p. 14.

points to Detective Smith's use of the word "avoid" in the following sentence from his arrest narrative:  "THE DRIVER OF THE VEHICLE, DURING HIS ATTEMPT TO AVOID THE PROBATION OFFICERS, OPERATED THE VEHICLE IN A VERY RECKLESS MANNER AND ENDANGERED THE GENERAL PUBLIC'S SAFETY."[17]  However, petitioner is misinterpreting Smith's use of the word.  Taken in the context of the entire report, it is clear that Smith used the word "avoid" as a synonym for "evade."  That is, Smith was saying only that the incident occurred while petitioner was attempting to evade the officers so as not to be apprehended; Smith was not indicating, as petitioner suggests, that petitioner was attempting to steer clear of the officers so as not to hit them.

        In summary, petitioner has presented no evidence whatsoever that the testimony of the state's witnesses was false, much less that the prosecution knew it was false.  Accordingly, this claim clearly should be rejected.

<u>Ineffective Assistance of Counsel</u>

        Petitioner also claims that he received ineffective assistance of counsel.  That claim was considered and rejected by the state courts on the merits.  The state district court held:

> Under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), defendant must show that his counsel's performance was deficient, and that the deficiency was such that it deprived the defendant of a fair trial.  Defendant alleges the deficiency to be the failure of his attorney to file a motion to quash the bill of information, insufficiency, and lack of preparation.  No further proof is offered, nor any further facts to make a showing that

---

[17]  Rec. Doc. 3-1, p. 4.

his appeal would be in any way successful.  Petitioner has not met his burden of proof.[18]

Relief was then likewise denied both by the Louisiana First Circuit Court of Appeal,[19] and by the Louisiana Supreme Court,[20] without additional reasons assigned.

Because an ineffective assistance claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

---

[18]  State Rec., Vol. III of IV, Order Dismissing Application for Post-Conviction Relief, p. 2.

[19]  State v. Holmes, No. 2008 KW 2517 (La. App. 1st Cir. Apr. 3, 2009); State Rec., Vol. III of IV.

[20]  State *ex rel.* Holmes v. State, 28 So.3d 265 (La. 2010) (No. 2009-KH-1000); State Rec., Vol. III of IV.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. \_\_\_\_, \_\_\_\_, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then

explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether*

> there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

Id. at 788 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claim.

As correctly noted by the state court, the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case,

viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

In the instant case, petitioner argues that his counsel was ineffective for failing to move to quash the bill of information based on the purported double jeopardy violation. However, as noted previously in this opinion, there was no double jeopardy violation in this case. Accordingly, any such motion to quash would have been meritless, and, therefore, counsel cannot be considered ineffective for failing to file it. See, e.g., United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); Clark v. Collins,

19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Petitioner also seems to argue, without elaboration, that his counsel failed to perform an adequate independent investigation of the facts and evidence.  However, a petitioner asserting a claim for inadequate investigation bears the burden to provide factual support as to what further investigation would have revealed.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). In the instant case, petitioner has brought forth no evidence to show that further investigation would have revealed any information whatsoever which would have been beneficial to the defense. Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation and his claim fails.  Everett v. Louisiana, Civ. Action No. 08-4745, 2009 WL 1971370, at *5 (E.D. La. July 7, 2009).

In summary, it is evident that the state court identified the proper standard, i.e. the Strickland standard, and applied it in a reasonable manner.  Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects the ineffective assistance of counsel claim.

<u>Sufficiency of the Evidence</u>

Lastly, petitioner claims that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant argues the evidence did not exclude the reasonable hypothesis of innocence that he was merely trying to escape, rather than trying to run over the probation officers.
>
> The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt.  In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded.  La. R.S. 15:438.  <u>State v. Wright</u>, 98-0601, p. 2 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486, <u>writs denied</u>, 99-0802 (La. 10/29/99), 748 So.2d 1157, and 2000-0895 (La. 11/17/00), 773 So.2d 732.
>
> When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.  When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.  <u>Wright</u>, 98-0601 at p. 3, 730 So.2d at 487.
>
> First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon a peace officer engaged in the performance of his lawful duties.  La. R.S. 14:30(A)(2).  However, a specific intent to kill is an essential element of the crime of attempted murder.  <u>State v. Butler</u>, 322 So.2d 189, 192 (La. 1975).  For purposes of La. R.S. 14:30(A)(2), "peace officer" includes any parole or probation officer.  La. R.S. 14:30(B)(1).

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A).

Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Buchanon, 95-0625, p. 4 (La. App. 1st Cir. 5/10/96), 673 So.2d 663, 665, writ denied, 96-1411 (La. 12/6/96), 684 So.2d 923.

In State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, the Louisiana Supreme Court set forth the following precepts for appellate review of circumstantial evidence in connection with review of the sufficiency of the evidence:

> On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
>
> The jury is the ultimate factfinder of "whether a defendant proved his condition and whether the state negated that defense." The reviewing court "must not impinge on the jury's factfinding prerogative in a criminal case except to the extent necessary to guarantee constitutional due process."

Mitchell, 99-3342 at p. 7, 772 So.2d at 83. (Citations omitted).

Further, the Mitchell Court cautioned:

"The actual trier of fact's rational credibility calls, evidence weighing, and inference drawing are preserved ... by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." The reviewing court is not called upon to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Rather, the court must assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt. The reviewing court cannot substitute its idea of what the verdict should be for that of the jury. Finally, the "appellate court is constitutionally precluded from acting as a 'thirteenth juror' in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact."

Mitchell, 99-3342 at p. 8, 772 So.2d at 83. (Citations omitted).

After a thorough review of the record, we are convinced the evidence presented in this case, viewed in the light most favorable to the State, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted first degree murder and the defendant's identity as the perpetrator of that offense against Officers Stewart and Breland. The verdict rendered against the defendant indicates the jury accepted the testimony of the State's witnesses. That testimony established that the defendant ignored police commands to stop and drove his vehicle at a high rate of speed, through gunfire, directly at Officers Stewart and Breland. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 99-0385, p. 9 (La. App. 1st Cir. 11/5/99), 745 So.2d 217, 223, writ denied, 2000-0829 (La. 11/13/00), 774 So.2d 971. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Glynn, 94-0332, p. 32 (La. App. 1st Cir. 4/7/95), 653 So.2d 1288, 1310, writ denied, 95-1153 (La. 10/6/95), 661 So.2d 464.

Moreover, the jury rejected the defense theory that the defendant was not trying to run over the probation officers when he drove into them, but was merely trying to escape. When a case involves circumstantial evidence and the jury reasonably rejects the

> hypothesis of innocence presented by the defense, that hypothesis
> falls, and the defendant is guilty unless there is another hypothesis,
> which raises a reasonable doubt.  See State v. Moten, 510 So.2d 55,
> 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). N o
> such hypothesis exists in the instant case.
>> This assignment of error is without merit.[21]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[22]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that petitioner has made no such showing in the instant case.

In a federal *habeas corpus* proceeding, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a

---

[21]  Holmes, 2007 WL 866365, at *2-4; State Rec., Vol. III of IV.

[22]  State v. Holmes, 967 So.2d 521 (La. 2007) (No. 2007-KO-0947); State Rec., Vol. III of IV.

*rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).  Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civ. Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. 2010).

In this case, the jurors obviously found the state's witnesses credible.  Although petitioner disagrees with the jurors' conclusions in that regard, questions concerning credibility are generally beyond the scope of Jackson and *habeas* review.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) ("[A] challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 (E.D. La. Mar. 8, 2010), aff'd, 2011 WL 3209843 (5th Cir. July 28, 2011).

Accordingly, for the reasons noted by the state court, the evidence in this case, viewed in the light most favorable to the prosecution, was clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt.  Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  As a result, the AEDPA requires this Court to defer to the state court's decision rejecting that claim.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Taurius Marques Holmes be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[23]

New Orleans, Louisiana, this twenty-second day of November, 2011.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.